IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.                                                      CRIMINAL NO. 3:18-cr-00102-GHD-RP

DAN V. SHARP                                                                    DEFENDANT

OPINION

The Court held a mental competency hearing in this matter on September 19, 2019, pursuant to 18 U.S.C. § 4241, in order to determine if the Defendant is competent to stand trial. At the conclusion of the hearing, the Court heard from the parties regarding three pending motions filed by the Defendant – a motion to sever [88], a motion to exclude evidence at trial [76], and a motion for substitution of counsel [90]. Upon due consideration and as further explained herein, the Court finds that the Defendant is competent to stand trial. The Court further finds that the Defendant's motion to sever counts shall be denied, the Defendant's motion to substitute counsel shall be denied, and the Defendant's motion to exclude evidence will be adjudicated upon the filing of a forthcoming motion in limine and/or at trial.

1. **Factual Background and Competence to Stand Trial**

The Defendant has been charged in a 19-Count Superseding Indictment with unlawful possession of firearms (as a felon) and various drug possession and trafficking violations. *See* Superseding Indictment [65]. On April 5, 2019, the Defendant motioned the Court, pursuant to 18 U.S.C. § 4241, for a psychological evaluation to determine the Defendant's mental competency to stand trial [61]. The Court granted the motion [63] and the Defendant underwent a psychological examination at the Federal Bureau of Prison's Federal Detention Center in Seatac, Washington, to determine his competence to stand trial; the evaluating psychologist submitted a report outlining

her findings on July 11, 2019 [69].[1] The Court then scheduled the September 19, 2019, hearing in order to adjudicate the Defendant's mental competency to stand trial [83]. At the hearing, the Court heard live testimony from the examining psychologist; the Court also has considered several filings from the parties regarding the Defendant's competency [87, 91, 97, 99, 100].

A district court may order a competency hearing when there is reasonable cause to believe that the defendant may be presently suffering a mental disease or defect rendering him mentally incompetent to stand trial. 18 U.S.C. § 4241(a). At the hearing, "[t]he court must determine 'by a preponderance of the evidence' whether 'the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is [1] unable to understand the nature and consequences of the proceedings against him or [2] to assist properly in his defense.'" *United States v. Porter*, 907 F.3d 374, 380 (5th Cir. 2018) (*quoting* 18 U.S.C. § 4241(d)).

"A district court can consider several factors in evaluating competency, including, but not limited to, its own observations of the defendant's demeanor and behavior; medical testimony; and the observations of other individuals that have interacted with the defendant." *United States v. Simpson*, 645 F.3d 300, 306 (5th Cir. 2011). "A defendant is competent where he has 'the present ability to consult with his lawyer with a reasonable degree of rational understanding and [has] a rational as well as factual understanding of the proceeding against him.'" *Porter*, 907 F.3d at 380 (quoting *Simpson*, 645 F.3d at 306.)). The Government bears the burden of proving the defendant is mentally competent. *United States v. Hutson*, 821 F.2d 1015, 1018 (5th Cir.1987).

---

[1] At the hearing, the Defendant stipulated to the testifying psychologist's status as an expert witness in forensic psychology.

As for the first prong of the Court's two-part test to determine competency, *i.e.*, whether the Defendant is able to understand the nature and consequences of the proceedings against him, a defendant has a factual and rational understanding of the proceedings if he "under[stands] his charges" and "[is] aware of the potential sentences." *Porter*, 907 F.3d at 382. This standard "does not require that a defendant *actually* have a present rational and factual understanding of the proceedings against him, but only that he is *capable* of having a rational and factual understanding of the proceedings against him. *United States v. Merriweather*, 921 F. Supp. 2d 1265, 1305–06 (N.D. Ala. 2013) (emphasis added). Courts have found that a defendant has this understanding when he knows and understands "the basic nature of the court proceedings," "the roles of the individuals involved in the proceedings," and "the potential benefits of plea bargaining." *United States v. Edwards*, No. 15-CR-00059, 2017 WL 2486366, at *2 (W.D. La. May 23, 2017), *report and recommendation adopted*, No. CR 15-00059, 2017 WL 2490003 (W.D. La. June 8, 2017).

As for the second prong of the Court's test, which is of greater concern in the case *sub judice* and which requires the Court to determine if the Defendant is able to assist properly in his defense, a defendant's *inability* to cooperate with his attorney may suggest he is incompetent because he cannot consult with his attorney; the defendant's *refusal* to cooperate does not render him incompetent. *Porter*, 907 F.3d at 380. at 381. A difficult client that "possess[es] the ability to communicate with and assist his attorneys" but who "chose[s] not to" is able to consult with his lawyer and is not incompetent to stand trial. *Id.* "The relevant legal question is not whether a defendant *will* 'assist properly in his defense,' but whether 'he [is] *able* to do' so." *United States v. Battle*, 613 F.3d 258, 263 (D.C. Cir. 2010) (quoting *United States v. Vachon*, 869 F.2d 653, 655 (1st Cir.1989)). Likewise, a defendant's "recalcitrant and irritable temperament" does not suggest incompetence if it is "the result of a conscious choice rather than the product of a mental defect

[he] could not control." *Id.* If the defendant's demeanor during his competency hearing is "controlled, responsive, and appropriate," that is evidence that the defendant can control his behavior. *Id.*

Here, the psychologist's report and testimony demonstrate that, in her expert opinion, there is no evidence that indicates the Defendant suffers from a mental disorder or disease that substantially impairs his present ability to understand the nature and consequences of the court proceedings brought against him, or that substantially impair his ability to assist counsel in his defense [69-1, at p. 21]. More specifically, the psychologist found and testified that the Defendant possesses an "above average" ability to understand the nature and consequences of the court proceedings against him, and an "average" ability to properly assist counsel in his defense [69-1, at p. 21]. Accordingly, the psychologist found and testified that the Defendant is competent to stand trial.

The psychologist testified that she met with the Defendant nine times for over a dozen hours in preparing her evaluation. In addition to the clinical interviews, the psychologist observed the Defendant's behavior at the facility, utilized several psychological tools and instruments to evaluate the Defendant's competence, and consulted supplemental information, including legal documents and mental health records. [69-1, at pp. 1-2]. She noted that the Defendant was cooperative and polite during his evaluation visits, has an excellent memory, and possesses an estimated intelligence quotient (IQ) of 87, which is in the low average to average range [69-1, at pp. 16-17]. She further noted that the Defendant has admittedly engaged in chronic illicit drug use for many years, and that he has been diagnosed with Antisocial Personality Disorder [69-1, at pp. 18-19].

As for the Defendant's competence to stand trial, the psychologist opined that the Defendant exhibits an above average understanding of the criminal charges pending against him and of the nature of the court proceedings [69-1, at p. 19]. She testified that he accurately detailed the 19 Counts he is facing in the Superseding Indictment, and that he is aware that the charges are felonies [69-1, at p. 19]. She further testified that he understands the basis for the charges and the potential sentences if he is convicted [*Id.*]. She testified that the Defendant demonstrates an above average understanding of the court participants and procedures, and that he is knowledgeable about trial procedures [*Id.* at p. 20]. As for the Defendant's ability to assist in his defense, the psychologist opined that the Defendant demonstrates "an average capacity to cooperate and assist counsel in his defense." [*Id.*] She further testified that the Defendant's Anti-Social Disorder does not render him incompetent, and that this Disorder is in any event not the type of condition that will render a defendant incompetent.

In sum, the psychologist testified and opined that "there is no evidence to indicate the defendant suffers from a mental disorder or disease that would substantially impair his present ability to understand the nature and consequences of the court proceedings brought against him, or substantially impair his ability to assist counsel in his defense." [Id. at p. 21]. Accordingly, in her expert opinion, the Defendant is competent to stand trial.

In *Porter*, the Fifth Circuit addressed a situation similar to this one. The defense counsel's argument in *Porter* was that the defendant's "refusal to cooperate must mean that he is not able to communicate with and help his lawyers." *Porter*, 907 F.3d at 381. Both the district court and the Fifth Circuit rejected that argument, however, as the Court does today herein, and found that while the defendant was difficult, he was able to cooperate with his attorneys but simply chose to not do so. *Id.* In affirming the district court, the Fifth Circuit ruled that the defendant's uncooperative

5

nature did not, by itself, render him incompetent, and that the defendant fully understood the nature of the proceedings and that he could cooperate with others when he chose to do so. *Id.* at 382. In so ruling, the Fifth Circuit distinguished between a defendant being unable to assist in his own defense and being unwilling to do so. *Id.*

The Court finds the same to be true in the case *sub judice*, and upon due consideration and after taking all relevant factors into account, hereby finds by a preponderance of the evidence that the Defendant herein is competent to stand trial. Specifically, the Court finds that the Defendant is not presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. 18 U.S.C. § 4241(d); *Porter*, 907 F.3d at 380. In so finding, the Court has relied on (1) its own observations of the Defendant's demeanor and behavior, which the Court finds are not indicative of mental incompetence; and (2) the aforementioned medical testimony, which concluded that the Defendant is competent to stand trial. The Defendant has displayed a factual and rational understanding of the proceedings, charges, and potential sentences he is facing. The Court further finds that the Defendant possesses the ability to assist properly in his defense. While the Defendant has, at times, refused to cooperate with his attorney(s), the Court finds that he possesses the ability to communicate with, and assist, his present attorney, as evidenced by his cooperative nature during his mental evaluation. The Court finds that any conflict the Defendant has had with his present attorney is the result of a conscious choice, rather than the product of a mental disease or defect that the Defendant cannot control. Accordingly, the Court finds that the Defendant is competent to stand trial, and he shall proceed to trial on the charges pending against him on November 4, 2019.

## 2. Defendant's Motion to Sever Prejudicially Joined Counts

The Defendant has moved for severance [88], arguing that the nineteen counts he is charged with in the Superseding Indictment [65] have been improperly joined and should be severed into three separate trials (a trial on Counts One through Seven; a trial on Counts Eight through Fourteen; and a trial on Counts Fifteen through Nineteen). For the reasons set forth below, the Defendant's contention that the Counts have been improperly joined or should be severed is without merit.

The Superseding Indictment [65] charges conduct that allegedly occurred on three separate dates:

1. Counts One through Seven (September 27, 2017) – the Defendant is charged with possession of five firearms, as a convicted felon, and possession with intent to distribute five different types of controlled substances that were allegedly found in his home.

2. Counts Eight through Fourteen (February 14, 2018) – the Defendant was pulled over for erratic driving in Desoto County; the Superseding Indictment alleges that he was discovered during the traffic stop to be in possession of three firearms and, with intent to distribute, possessed five different types of controlled substances.

3. Counts Fifteen through Nineteen (April 19, 2018) – the Superseding Indictment charges that the Defendant was observed by law enforcement officers distributing cocaine and was discovered to be in possession of, with intent to distribute, four additional different types of controlled substances.

As for the Defendant's argument regarding joinder of the subject offenses, Rule 8(a) of the Federal Rules of Criminal Procedure provides that offenses are properly joined when they are either (1) of the same or similar character, (2) based on the same act or transaction, or (3) are connected with or constitute parts of a common scheme or plan. Fed. R. Crim. P. 8(a). The Fifth Circuit has made clear that "[j]oinder of charges is the rule rather than the exception and Rule 8 is construed liberally in favor of initial joinder." *United States v. Bullock*, 71 F.3d 171, 174 (5th Cir. 1995).

Here, the offenses are clearly of the same or similar character, as Rule 8 requires for joinder. Each of the Nineteen counts charge a firearm or drug crime, and the Fifth Circuit has held that two or more offenses are of the same or similar character if they both involve similar activities or methods. *United States v. Fortenberry*, 919 F.2d 923, 926 (5th Cir. 1990). The Defendant is charged for the exact same crimes (firearms and drug violations) in the September 27, 2017, and February 14, 2018, charges, and the April 19, 2018, charges are for drug violations, which are likewise charged in both the September and February counts. Given the obvious similar nature of the charges in each of the three date groups, the counts are clearly of the "same or similar character" as is required by Rule 8 for joinder. *United States v. Guidry*, No. CR 17-00040, 2017 WL 2952334 (W.D. La. July 7, 2017). Accordingly, the Court finds that the portion of the Defendant's motion that argues the charges are improperly joined is without merit and shall be denied.

The Defendant next argues that severance (into three separate trials), pursuant to Rule 14 of the Federal Rules of Criminal Procedure, is appropriate because joinder of the counts into a single trial is prejudicial. Rule 14(a) provides that the court may sever counts into separate trials when a single trial would prejudice the defendant. Fed. R. Crim. P. 14(a). The burden is on the defendant, however, to demonstrate prejudice, and the burden "is a difficult one." *Park*, 531 F.2d at 762. The Fifth Circuit has held that any prejudice that potentially exists can usually be cured with an appropriate limiting instruction to the jury. *United States v. Turner*, 674 F.3d 420, 430 (5th Cir. 2012).

Here, the Defendant argues that permitting joinder of the weapons counts (as a felon in possession) with the drug counts is prejudicial because the weapons charges require evidence of the Defendant's previous felony convictions. The fact is, however, that two of the three groups of charges (the September 27, 2017, and February 14, 2018 counts) both include weapons charges,

so there is no potential prejudice whatsoever in the joinder of those groups of charges into a single trial. As for the April 19, 2018, charges, the Court finds that a limiting instruction will be sufficient to cure any potential prejudice, and severance is not required, because evidence of the Defendant's prior convictions may ultimately be relevant and admissible with regard to those charges, should the Government seek to introduce any such evidence. See *Turner*, 674 F.3d at 431 (holding that any prejudice is reduced when "evidence of [Defendant's] prior felony convictions would have been relevant and admissible for other purposes").

Accordingly, the Court finds that any potential prejudice to the Defendant can be cured at trial with an appropriate limiting instruction to the jury regarding the April 19, 2018, charges. The Court shall therefore deny the Defendant's motion to sever.

3. **Defendant's Motion to Exclude Evidence and Motion to Substitute Counsel**

   a. Motion to Exclude Evidence at Trial

The Defendant seeks at trial to exclude certain photographic evidence (provided to him by the Government as Rule 16 disclosures) taken at the scene of his home on September 27, 2017. The Defendant argues that he is not presently charged with any crimes other than those contained in the Superseding Indictment and that introduction of any photographs depicting any other potential crime(s) would be irrelevant and prejudicial, and thus in violation of Rules 402 and 403 of the Federal Rules of Evidence.

The Government has responded that it does not intend to offer any of the subject photographs during its case-in-chief, but that if the Defendant testifies and discusses the circumstances surrounding any other potential crime(s), the subject evidence may indeed become relevant. The Government thus wishes to reserve the right to seek introduction of the photographs in the event the Defendant opens the door to such evidence during the trial.

At the September 19, 2019, hearing, the Defendant advised the Court that he would file a supplemental pre-trial motion in limine regarding this evidence and any anticipated accompanying related testimony. As such, the Court shall take the present motion under advisement, and shall, through the utilization of the present motion and the Defendant's forthcoming supplemental motion and trial objections, take all necessary precautions to ensure that only relevant and admissible evidence is admitted at the trial of this matter.

b. Motion to Substitute Counsel

The Defendant has filed, *pro se*, a second motion [90] to substitute his present court-appointed counsel, Tom Levidiotis, who is the second attorney the Court has appointed to represent the Defendant. As grounds, the Defendant states that Levidiotis has caused a conflict between himself and the Defendant, refused to file certain pretrial motions, gather evidence, and procure witnesses, and that irreconcilable differences between the two have arisen as a result. The Defendant largely made these same arguments in relation to his initial court-appointed attorney, who was eventually granted leave to withdraw as counsel. For the reasons set forth below, the Court shall deny the Defendant's motion - it appears likely that the Defendant will make similar arguments no matter who serves as his counsel, and that permitting him to replace his present attorney would be an exercise in futility; no one can likely do a better job working with and representing the Defendant than his present counsel.

After permitting the Defendant's initial court-appointed attorney to withdraw from representation of the Defendant, the Court appointed Mr. Levidiotis to represent the Defendant on March 21, 2019 [58]. Less than three weeks later, the Defendant filed a *pro se* motion to substitute counsel [62]. The Defendant's concerns with Mr. Levidiotis at that time were largely the same as the concerns he alleged he had with his initial attorney: that Mr. Levidiotis would not file certain

motions at the Defendant's direction. The Defendant also took exception with Levidiotis' suggestion that the Defendant may be incompetent to stand trial. The Court denied the Defendant's motion to substitute counsel without prejudice and ordered the Defendant to undergo a competency evaluation [63, 64].

On September 5, 2019, the Defendant filed the present *pro se* motion, seeking once again to substitute counsel. The motion details the same problems as before: that Levidiotis questioned the Defendant's competency to stand trial and refused to file certain motions at the Defendant's direction.

The Sixth Amendment enshrines a defendant's right to counsel in a criminal prosecution. U.S. Const. amend. VI. To this end, when a defendant is unable to afford an attorney, the Court appoints him one. Fed. R. Crim P. 44; 18 U.S.C. § 3006A. The right to counsel, however, does not mean that the indigent defendant is entitled to have appointed counsel of their choice. *United States v. Conlan*, 786 F.3d 380, 391 (5th Cir. 2015). The Court is required to appoint a new attorney only "if there is a substantial conflict or problem affecting the ability to represent the defendant — a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which led to an apparently unjust verdict." *Id.* (quoting *United States v. Mitchell*, 709 F.3d 436, 441 (5th Cir. 2013)). Mistrust and dislike of appointed counsel does not warrant the substitution of counsel. *United States v. Roman*, 823 F.3d 299, 312 (5th Cir. 2016).

Here, the Defendant asserts that he has three problems with his present counsel, Mr. Levidiotis: first, that Levidiotis will not file certain motions that the Defendant wants him to file; second, that Levidiotis questioned whether the Defendant is competent to stand trial; and third, that Levidiotis believes that the Defendant is guilty of particular crimes. The Court will address these arguments in turn.

First, the Defendant argues that he requires new counsel because Levidiotis will not file certain motions the Defendant wishes him to file. However, "[m]ere disagreement about strategic litigation decisions is not a conflict of interest." *United States v. Fields*, 483 F.3d 313, 353 (5th Cir. 2007). Moreover, the mere assertion that a defendant's counsel did not file certain pre-trial motions does not raise a question of whether a conflict exists; instead, the defendant must assert facts that justify the filing of such motions. *United States v. Austin*, 812 F.3d 453, 456 (5th Cir. 2016). While the Defendant is entitled to assist in his own defense, Mr. Levidiotis is not required to file any motion simply because the Defendant demands it. *McCoy v. Louisiana*, ___ U.S. ___, 138 S. Ct. 1500, 1508, 200 L. Ed. 2d 821 (2018). Not only has the Defendant failed to show why any of his desired pre-trial motions are warranted, some motions the Defendant wishes Levidiotis to file may even conflict with Levidiotis' ethical duties as an attorney. Accordingly, this ground for appointment of new counsel is without merit.

Next, the Defendant asserts that an irreconcilable conflict exists because Levidiotis sought a competency determination. The Court itself, however, held that there was a "reasonable cause to believe" that the Defendant may be "suffering from a mental disease or defect rending him mentally incompetent . . ." justifying a competency examination and hearing [63]. 18 U.S.C. § 4241(a). In any event, the Court has ruled herein that the Defendant is competent to stand trial, thereby effectively mooting this inquiry as a ground for conflict between Levidiotis and the Defendant.

Finally, the Defendant asserts that a conflict exists because Levidiotis has accused him of committing both the crimes for which he was indicted and another crime for which the Defendant has not been charged. The Court will refrain from specifics to avoid prejudicing the Defendant, but the gist of a letter Levidiotis wrote to the Defendant, that the Defendant read in open court

during the September 19, 2019, hearing in an apparent attempt to bolster his argument that Levidiotis should be replaced, is that Levidiotis was candidly describing the evidence he expects the Government to present at trial, how that evidence might satisfy the elements of the crimes the Defendant has been charged with committing, and the pitfalls the Defendant will face if he chooses to testify in his own defense. At no point in the letter does Levidiotis accuse the Defendant of committing any crimes.

None of this requires the Court to provide the Defendant a new counsel. In *United States v. Wright*, the D.C. Circuit recently reviewed whether the district court erred in refusing to appoint the defendant a new attorney. 923 F.3d 183 (D.C. Cir. 2019). In that case, the defendant made accusations against his attorney that are very similar to the facts of this case. *Id.* at 185-87. There, as here, most of the complaints were over trial strategy and communication. *Id.* The attorney made multiple attempts to share information with the defendant, only for the defendant to cut him off and refuse to cooperate; the defendant stated that he did not trust the attorney and was uncomfortable with him. *Id.* The court affirmed the district court's refusal to appoint new counsel, holding that "the defendant's qualms about appointed counsel lack merit, are purely subjective, or are of his own making ... [and] do not constitution the "good cause" necessary to warrant substitute counsel ... ." *Id.* at 189.

Likewise, this Court rules that the Defendant's complaints do not represent a conflict of interest between himself and Levidiotis sufficient to warrant the substitution of counsel. To the extent there are communication problems between the two, those issues are of the Defendant's own making and are a conscious choice on his part. It is the Court's opinion that no counsel could satisfy the Defendant, and this Court is not required "to appoint an unending parade of replacement counsel" to placate him. *Id.* Mr. Levidiotis is a long-serving criminal defense attorney in this

Court and is highly experienced. He has competently represented dozens of criminal defendants over a period of more than twenty-five years in this Court. Because there is no conflict that requires the appointment of substitute counsel, the Court denies the Defendant's motion seeking a new attorney.

### 4. **Conclusion**

In sum, for the foregoing reasons, the Court finds that the Defendant is competent to stand trial pursuant to the standard set forth in 18 U.S.C. § 4241. Trial in this matter shall commence on November 4, 2019, as previously set and noticed by the Court [75]. In addition, the Defendant's motion to sever [88] is denied, the Defendant's motion to substitute counsel [90] is denied, and the Court shall take the Defendant's motion to exclude evidence [76] under advisement, pending the filing of a supplemental motion in limine and/or in accordance with objections to the subject evidence at trial.

An order in accordance with this opinion shall issue this day.

SO ORDERED, this, the 26 day of September, 2019.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE