UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

vs.                                                                    CRIMINAL NO. 3:18-CR-102-GHD-RP

DAN V. SHARP                                                                                    PETITIONER

**MEMORANDUM OPINION**

Presently before the Court is Petitioner Dan V. Sharp's ("Petitioner") Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [186].[1] The United States ("the Government") has responded [193], and after due consideration of their arguments, the Petitioner's Motion [186] should be denied for the reasons that follow.

*I.    Factual and Procedural Background*

Several run-ins with the authorities led up to the culmination of Petitioner's trial. Beginning on September 27, 2017, Horn Lake, Mississippi, 911 Dispatch received a call about a possible suicide [193]. The responding police officers found Petitioner and Monica Sykes in the home's bedroom [*Id.*]. Sykes was lying on the floor unresponsive with a handgun by her side, and "the officers noticed pill bottles lying on the bed . . . [and] AK-style rifles in the [bedroom closet] laundry hamper" [*Id.*]. The officers executed a search warrant of the home and Petitioner's car parked outside finding "drugs, digital scales, and firearms" [*Id.*]. After his arrest, Petitioner admitted he knew about the firearms during a police interview [*Id.*].

On February 14, 2018, at approximately 2:00 a.m., Desoto County Sheriff's Deputy Jacob Bramlett pulled Petitioner over after he swerved into the deputy's lane almost hitting his patrol car [*Id.*]. After asking for Petitioner's license, Deputy Bramlett found they were

---

[1] Petitioner also brings a Motion to Compel Defense Counsel to Surrender the Case File in the Above Styled Action to the Defendant of this Case [Doc. 185]. Due to the findings and rulings in this Opinion, the Court denies that Motion as moot [185].

1

suspended, and he noticed Petitioner "appeared to be drowsy and slow to respond" to questions while also having difficulty following instructions [*Id.*]. Deputy Bramlett requested Petitioner step out of his vehicle and patted him [*Id.*]. Noting Petitioner "was unsteady, had glassy, bloodshot eyes, and a strong odor of marijuana coming from his clothing, Deputy Bramlett patted him down finding "a pistol magazine in the left pocket of his jacket" [*Id.*]. It was then Petitioner admitted he had a pistol in the car which Deputy Bramlett retrieved along with marijuana and two other handguns [*Id.*]. Investigators later found two cellphones and digital scales in the car as well [*Id.*]. Sharp was then taken into custody and given an interview "after signing a form waiving his Miranda rights" in which he stated "he bought two of the firearms and traded drugs for one of the firearms" [*Id.*].[2]

On April 19, 2018, a confidential informant notified Desoto County law enforcement officers Petitioner "was in Hernando, Mississippi with methamphetamine" and "he had recently seen [Petitioner] with a black drawstring bag in which [Petitioner] kept his drugs" [*Id.*]. Officers including a detective and DEA task force officer searched for and located Petitioner outside of the Desoto County Courthouse after which he traveled to a tattoo parlor—with a Detective Brea following—and entered with the already identified black drawstring bag [*Id.*]. Detective Brea then witnessed the Petitioner exit the parlor and get back in his car [*Id.*]. A tattoo parlor employee then came out and reached in Petitioner's vehicle for what Detective Brea believed to be a "hand-to-hand drug transaction" while another got into the backseat of Petitioner's car [*Id.*]. Other officers approached noticing the smell of marijuana, and searching the vehicle, they found "a cell phone box in a black bag" containing controlled substances, digital scales, "cell phones containing text messages in which [Petitioner] was quoting prices for different controlled substances, and a wallet containing cocaine residue" [*Id.*].

---

[2] Officers later discovered the traded firearm was stolen [193].

2

Petitioner's original indictment was filed on August 23, 2018, containing nineteen counts related to drug and firearms charges [16]. A subsequent superseding indictment also contained nineteen counts related to drug and firearms charges [65]. However, counts four, ten, and nineteen were dismissed October 31, 2019, by Order of this Court [127]. That same day, Petitioner waived his Sixth Amendment right to counsel and proceeded pro se with his appointed counsel, Thomas C. Levidiotis, as stand by counsel [131, pp. 9-10]. On November 4, 2019, Petitioner's trial began, continuing until November 7, 2019, when the jury "returned a guilty verdict on all counts except Count Seventeen" [193]. Petitioner then filed a pro se Motion for Judgment of Acquittal [145] on November 25, 2019, which this Court subsequently denied [170] on May 26, 2020, sentencing Petitioner to 255 months of imprisonment [193]. This was soon followed with a timely appeal to the Fifth Circuit [171]. Petitioner made arguments concerning suppression of evidence; sufficiency of evidence; denial of his Motion to Sever [113]; prejudice of his wearing shackles; *Crawford* violations; and his right to counsel [193]. The Fifth Circuit addressed each of these arguments, upholding this Court's decisions and Petitioner's convictions [*Id.*]. *United States v. Sharp*, 6 F.4th 573, 579 (5th Cir. 2021). After his unsuccessful Fifth Circuit appeal, Petitioner petitioned the Supreme Court of the United States for a writ of certiorari which was denied on February 22, 2022, and he now brings this Motion to Vacate [186]. *Sharp v. United States*, No. 21-911, 142 S.Ct. 1124 (2022).

## *II.    Legal Standard*

28 U.S.C. § 2255(a) permits an inmate serving a sentence after conviction of a federal crime to "move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The inmate may support such a motion by arguing (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court

3

was without jurisdiction when it imposed its sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is "otherwise subject to collateral attack." *Id.* If an inmate does not contend there was a constitutional or jurisdictional problem with their sentence, they can still succeed on their motion by arguing there was an error constituting "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979).

The petitioner bears the burden of establishing his claims by a preponderance of the evidence. See *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). After conducting a preliminary review of a § 2255 motion, a district judge must dismiss the motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceeding that the moving party is not entitled to relief." Rule 4(b) of the Rules Governing Section 2255 Proceedings. Alternatively, if the motion raises a non-frivolous claim to relief, the court must order the Government to take appropriate action, usually by filing a response. *Id.* If good cause is shown, the court has the power to authorize limited discovery. Rules 6-7 of the Rules Governing Section 2255 Proceedings. After reviewing the Government's response and any additional materials submitted by the parties, the court must determine whether an evidentiary hearing is warranted. Rule 8 of the Rules Governing Section 2255 Proceedings. An evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Similarly, an evidentiary hearing is unnecessary if the prisoner does not produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)).

4

In cases involving certain structural errors, judicial relief would follow automatically after the errors have been proven. See *Burgess v. Dretke*, 350 F.3d 461, 472 (5th Cir. 2003). In contrast, some errors are harmless and warrant no relief, while others would result in relief only if they had "substantial and injurious effect or influence" in determining the outcome of the prisoner's case. *Brecht v. Abrahmson*, 507 U.S. 619, 637 (1993). If a court finds a prisoner is entitled to relief, then it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

Motions filed under this statute are subject to a one-year limitation period. 28 U.S.C. § 2255(f). The clock starts for this statute of limitations from the *latest* of four possible options:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1-4). The Supreme Court has held that "[f]or the purpose of starting the clock on § 2255's one-year limitation period . . . a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction." *Clay v. United States*, 537 U.S. 522, 525 (2003). "Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Id.* at 527.

5

### *III. Analysis and Application*

The Court notes at the outset, Petitioner did timely file this Motion to Vacate on January 6, 2023, less than a year after his writ of certiorari was denied [186]. In his Motion [186], Petitioner raises several arguments. Specifically, he claims (1) this "Court erred in denying [his] Motion to Sever the offense into separate trials;" (2) this "Court erred in requiring [him] to appear in front of the jury" shackled; and (3) ineffective assistance of counsel [*Id.*]. More substantively, however, he further claims (4) "the firearms [used in evidence against him] were not 'used' in the commission of a drug offense;" (5) "there was no proof of 'intent to distribute';" (6) "proof was insufficient regarding possession of drugs and/or firearms on September 27, 2017; (7) "Agent Thomas Brea violated [his] Confrontation Clause rights by testifying to what an informant told him;" (8) this Court erred in denying his Motion to Suppress [27] regarding the February 14, 2018, traffic stop; (9) and this Court denied Petitioner his "6th Amendment right to counsel when [he] moved to withdraw waiver of counsel to have standby counsel resume role as counsel of record" [186].

Many of these claims were already raised in prior proceedings. Once Petitioner "raised and adjudicated [these arguments] on direct appeal," he lost his ability to "re-raise the claim under § 2255 absent a change in law." *United States v. Davis*, 971 F.3d 524, 531 (5th Cir. 2020) (citing *e.g.*, *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986)). Because no relevant change in law exists, those issues which Petitioner has already adjudicated on appeal need not be discussed again. *Id.* Referring to the Fifth Circuit's opinion in this case, this Court notes Petitioner raised issues 1, 2, 4, 5, 6, 7, 8, and 9 on appeal; therefore, those issues will not be readdressed for § 2255 purposes. *United States v. Sharp*, 6 F.4th 573, 579-83 (5th Cir. 2021). The

6

Court will discuss the remaining issue of ineffective assistance of counsel. Each of Petitioner's attorneys are discussed individually based on their alleged conduct.

### A. Ineffective Assistance of Counsel

"Claims of ineffective assistance of counsel are governed by the standard laid out in *Strickland v. Washington*, 466 U.S. 668 (1984)," and to succeed on that claim, "a petitioner must satisfy the two-prong test . . . by demonstrating both constitutionally deficient performance and actual prejudice as a result of such ineffective assistance." *Fields v. United States*, No. 1:15-cr-111-GHD, 2018 WL 1077311, *2 (N.D. Miss. Feb. 27, 2018) (citing *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994)). Failure to establish both prongs warrants the claim's rejection. *Id.* (citing *Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998); *Bates v. Blackburn*, 805 F.2d 569, 578 (5th Cir. 1986) (overruled on other grounds)).

The deficiency prong requires a showing "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The Court's review of counsel's actions is "highly deferential," and "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Fields*, 2018 WL 1077311 at *2 (citations omitted) (internal quotation marks omitted). Further, "there is a strong presumption that counsel has exercised reasonable professional judgment." *Id.* (citing *Strickland*, 466 U.S. at 689; *Martin v. McCotter*, 796 F.2d 813, 817 (5th Cir. 1986)).

The prejudice prong requires a showing that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. This is accomplished when a petitioner shows "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *U.S. v.*

7

*Fields*, 565 F.3d 290, 294 (5th Cir. 2009) (citing *Strickland*, 466 U.S. at 694) (internal quotation marks omitted). Despite the *Strickland* test, the Fifth Circuit has emphasized, "If the facts adduced at trial point so overwhelmingly to the defendant's guilt that even the most competent attorney would be unlikely to have obtained an acquittal, then the defendant's ineffective assistance of counsel claim must fail." *Jones v. Jones*, 163 F.3d 285, 304 (5th Cir. 1998) (quoting *Green v. Lynaugh*, 868 F.2d 176, 177 (5th Cir.), *cert. denied*, 493 U.S. 831 (1989)) (internal quotation marks omitted). The Court turns now to the application of these standards to each of Petitioner's attorneys.

### B. Gregory S. Park

Petitioner makes a multitude of allegations against his first attorney, Mr. Gregory S. Park ("Mr. Park"). Specifically, he claims Mr. Park "failed to conduct any pretrial investigation, failed to hire an investigator . . ., and failed to contact potential witnesses" [186]. He also alleges Mr. Park

> failed to interview, subpoena, and present the following witnesses: (1) Brandy Carlwell, [Petitioner's] girlfriend; (2) Ray Cox, the landlord of the home in which the September 27, 2017, incident occurred; (3) Sgt. Thomas Campbell, the backup officer during the February 14, 2018, traffic stop; and (4) Jimmy Daughtrey, a tattoo artist and employee of the tattoo parlor where the events of April 19, 2018, took place.

[193; *see also* 186]. "A [petitioner] who alleges a failure to investigate on the part of his counsel must allege *with specificity* what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Fields*, 761 F.3d 443, 461 (5th Cir. 2014) (emphasis added). Petitioner has failed to do so regarding the above allegations. He provides one affidavit by Brandy Latrice Carlwell ("Carlwell"), but it provides nothing more than conclusory statements and emphasizes Mr. Park did in fact do some investigation into her testimony [186, attached affidavit]. For example, Carlwell stated she testified "at a June 6, 2018, forfeiture

8

hearing in Desoto County, Mississippi," and she "maintained contact with FPD Greg Park and Court Appointed Thomas Levidioitis" [*Id.*]. Nothing in the affidavit, however, leads this Court to believe its admittance would have altered the outcome of the trial. This is insufficient to support an ineffective assistance claim.

Further, Petitioner's complaints of Mr. Park's failure to "subpoena" and "present" these witnesses fails because the Fifth Circuit has repeatedly found whether to call witnesses is a trial strategy and complaints involving uncalled witnesses are "disfavored." *United States v. Harris*, 408 F.3d 186, 189 (5th Cir. 2005); *Buckley v. Collins*, 904 F.2d 263, 266 (5th Cir. 1990); *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984). To succeed on this argument Petitioner must show how each witness' testimony would have helped the Petitioner at trial and the witness would have actually testified at trial to certain information. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Petitioner has not provided proper evidence to overcome that standard. Therefore, the arguments listed above are without merit.

Petitioner further alleges Mr. Park "should have identified the confidential informant related to the April 2018 stop for the suppression hearing;" failed to impeach Deputy Jacob Bramlett's testimony at the March 11, 2019, suppression hearing; and "failed to provide him with accurate sentencing advice" [193; 186]. As the Government points out, Petitioner has provided nothing more than a conclusory statement regarding Mr. Park's failure to obtain the identity of the confidential informant [*Id.*]. The burden is on Petitioner to provide information pointing to how this information would have altered the outcome of his trial, and he provides this Court with no such evidence. *Strickland*, 466 U.S. at 687; *Fields*, 565 F.3d at 294. This then is another meritless argument.

9

Turning to Petitioner's next argument regarding Deputy Bramlett's testimony, the parties contest whether Mr. Park actually attempted to impeach the witness [*Id.*]. Mr. Park did in fact cross-examine Deputy Bramlett at the suppression hearing on March 11, 2019 [85, pp. 13-24]; however, Petitioner's argument regarding Mr. Park's failure to impeach Deputy Bramlett is misplaced. The record reflects Mr. Park's cross-examination was effectively setting the witness up for a potential future impeachment, and it was likely impossible for Mr. Park to impeach the witness with a "dispatch report [or] dispatch audio" [186] because it was too early in the proceedings to do so [85, pp. 13-24]. Had Petitioner allowed Mr. Park to continue as his attorney, the opportunity to impeach Deputy Bramlett based on his answers to Mr. Park's suppression hearing questions might have arisen. Regardless, Petitioner fails to show (1) Mr. Park's conduct fell below the Sixth Amendment's required professional conduct and (2) but for these actions his trial outcome would have been different. Therefore, this argument cannot be found to support Petitioner's ineffective assistance of counsel claim.

Petitioner's final argument concerning Mr. Park's sentencing advice also fails. "For a guilty plea to be knowing, the defendant must have a 'full understanding of what the plea connotes and of its consequence.'" *United States v. Lincks*, 82 F.4th 325, 331 (5th Cir. 2023) (citing *Boykin v. Alabama*, 395 U.S. 238, 244 (1969)). "At a minimum, a guilty plea's sentencing consequences include the maximum sentence for the offense charged." *Id.* (citing *United States v. Hernandez*, 234 F.3d 252, 255-56 (5th Cir. 2000) (per curiam)). Based on the record, it is clear to this Court Mr. Park provided sentencing advice within reasonable professional judgment, and Petitioner provides nothing more than conclusory allegations to rebut that understanding. Nevertheless, Petitioner was the ultimate decision maker concerning his plea deals—of which he had two prior to trial, and he declined both while under the representation of different attorneys.

This leads the Court to the conclusion the attorneys' advice was not the driving force behind Petitioner's decision to proceed to trial, but Petitioner's own wish to proceed and gamble the odds with a jury as is his right. As a result, Petitioner's final argument is without merit, and he did not receive ineffective assistance of counsel from Mr. Greg Park.

### C. Thomas C. Levidiotis

Thomas C. Levidiotis ("Mr. Levidiotis") was Petitioner's second attorney and "standby counsel" during trial [193]. The Court reemphasizes here Petitioner waived his Sixth Amendment right to counsel at trial on October 31, 2019 [131, pp. 9-10]; therefore, Mr. Levidiotis is only responsible on this Motion [186] for those acts he took before that date. Petitioner points to Mr. Levidiotis's "debilitating conflict of interest" as evidence of his ineffectiveness as counsel [186]. This is referring to a dispute between the Petitioner and Mr. Levidiotis about arguing Petitioner's competency [193; 186]. While the Fifth Circuit finds the choice in pursuing the competency defense a "trial strategy," that court does not consider disputes over trial strategy conflicts of interest. *Roberts v. Dretke*, 381 F.3d 491, 499 (5th Cir. 2004) ("[Counsel] reasonably concluded that further investigation of [the defendant's] mental health history was unnecessary."); *United States v. Fields*, 483 F.3d 313, 353 (5th Cir. 2007) ("Mere disagreement about strategic litigation decisions is not a conflict of interest."). This therefore is yet another meritless argument.

Petitioner further argues Mr. Levidiotis was "ineffective for failing to file a motion to reconsider the suppression of the evidence resulting from the February 14, 2018, stop" [186]. In his Motion to Vacate [186], Petitioner states, the "Motion to Reconsider would have contained the Court's plain error" [*Id.*]. The plain error to which Petitioner refers is a matter of minutes and seconds, and he fails to show but for Mr. Levidiotis's decision to not file that motion or make

those arguments he would likely have obtained a different outcome at trial. Therefore, this argument fails as well.

In addition to the complaints above, Petitioner also finds fault with Mr. Levidiotis for allegedly failing "to investigate a defense to the counts stemming from September 2017;" "refusal to withdraw as counsel, . . . failure to communicate, and his alleged ineffective motion to sever" [193; 186]. As previously discussed concerning almost identical complaints against Mr. Park, the burden to show Mr. Levidiotis's ineffectiveness rests with Petitioner. *Fields*, 2018 WL 1077311 at *2. And just as with Mr. Park, Petitioner provided nothing more than the conclusory complaints listed above to support these ineffective assistance arguments against Mr. Levidiotis [186]. The same analysis as above applies, and that analysis applied to Mr. Levidiotis's actions provides the same outcome. Petitioner has failed to show Mr. Levidiotis provided ineffective assistance of counsel.

### D. Mark A. Cliett

Mark A. Cliett ("Cliett") was Petitioner's retained counsel for appeal [186; 193]. Petitioner primarily claims Mr. Cliett was ineffective as counsel because he failed to adequately consult with him and failed to raise many of the issues he now argues for post-conviction relief on appeal [193; 186]. To reiterate, Petitioner has the burden to prove Mr. Cliett (1) "made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) "there is a reasonable probability that, but for [his] unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 687; *Fields*, 565 F.3d at 294. While he does list twelve different grievances against Mr. Cliett, Petitioner failed to provide evidence supporting either prong for any of those grievances [186]. Therefore, Petitioner's ineffective assistance of counsel claim against Mr. Cliett is without merit.

## *IV.   Conclusion*

For the reasons stated above, the Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [186] and Motion to Compel Defense Counsel to Surrender the Case File in the Above Styled Action to the Defendant of this Case [185] shall be denied. An order in accordance with this opinion shall issue this day.

THIS, the 3rd day of February 2025.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE